## WILLIAM HOWARD ANDERSON v. GEORGE S. GRIMES.[1]

May 29, 1931.

No. 28,508.

*Ben R. Toensing,* for appellant.

*William Howard Anderson* and *Woodlief Thomas,* for respondent.

[1]Reported in 237 N. W. 9.

LORING, J.

In an action in the municipal court of Minneapolis the plaintiff recovered a verdict for one-half of the attorney's fees received by defendant from the receiver in a suit against the Four County Farmers Mill Co-operative Association (hereinafter designated as the association) which resulted in the enforcing of the stockholders' statutory liability in the association. The defendant moved for judgment or a new trial. His motion was denied as to both, and he appeals. In determining whether judgment should have been granted we must take the interpretation of the record most favorable to the plaintiff's theory, and the facts hereinafter stated are those as claimed by plaintiff unless otherwise indicated.

In 1921 the plaintiff had for collection a claim or claims against the Kensington Mills, Inc. and the association, both Minnesota corporations. There is some evidence in the record indicating that the association was the successor to the business previously conducted by Kensington Mills, Inc. and that it assumed its obligations.

Plaintiff was engaged principally in the collection business; and, having reduced his claim against Kensington Mills, Inc. to judgment, he came to the conclusion that he would endeavor to have that corporation thrown into a receivership, in which he anticipated there would be fees for a receiver and his attorney. In his suit against the two companies the association had answered, and so he had no judgment against it. In this situation he sought help from defendant as an experienced practitioner, well versed in receivership proceedings where stockholders are sought to be held on their statutory liability. Plaintiff alleges that he arranged with defendant that steps should be taken to throw both corporations into the hands of receivers and that the stockholders' statutory liability should be enforced and the attorney's "fees and profits realized from the proceedings to enforce the stockholders' liability of said two corporations were to be divided equally between the plaintiff and the defendant." He said: "We were to split on everything we handled against both companies," but it is evident that this referred to receivership proceedings, not to claims of their clients,

for, he added: "I had the claims and was in position to offer him business where he could get money out of receivership proceedings. I controlled the business, and he was to do the work."

Defendant denies such an arrangement, although admitting that he was receiver for the Kensington Mills, Inc. and that plaintiff was his attorney of record in that matter. The proceedings against the last mentioned corporation resulted in a decision that there was no stockholders' liability. Carnegie D. & F. Co. v. Kensington Mills, Inc. 152 Minn. 258, 188 N. W. 270. Consequently there was nothing from which the receiver or his attorney could be paid.

Shortly after the receiver was appointed for the Kensington Mills, Inc. defendant brought suit in behalf of Melges, one of his own clients, against the association, recovered a judgment, and obtained the appointment of one Zander as receiver. Plaintiff claims this was by arrangement with him, as a substitute for his claim against the association. He says: "It did not make any difference whether we used the Carnegie Dock Company or Melges. It would be the same thing. It would be an action to enforce stockholders' liability." No reasonable person could read plaintiff's testimony and arrive at any other conclusion than that the sole purpose of the arrangement claimed by him was to take advantage of the financial embarrassment of these corporations, force them into the hands of a receiver, and profit by the enforcement of the stockholders' liability and the consequent fees allowed to the receiver and his attorney. It is significant that no allegation appears in the complaint and the plaintiff said little if anything about dividing the fees which they might earn from their clients who were creditors of the corporation and whose claims they were using to force the receiverships. Perhaps this was because no collection of their clients' claims was anticipated. It may be said for defendant that he denies the plaintiff's version of the arrangement.

Defendant, after obtaining his judgment and the appointment of Zander as receiver, obtained an order assessing the stockholders of the association and brought a large number of suits to collect the liability. Defendant tried 24 cases in the district court at

Alexandria, and five appeals were heard in this court. He claims that his services over a period of nine years and seven months were worth $3,665. The funds realized were insufficient to pay all the bills of the receiver, and defendant's bill was allowed at $1,532.96. It is one-half of this sum that plaintiff seeks to recover. The plaintiff rendered no assistance whatever in the litigation originating from the Melges judgment. He was not attorney of record. The most that can be said is that at times he inquired as to progress.

It is claimed by defendant that even if plaintiff's version of the arrangement be accepted there was no legal consideration passing to defendant from plaintiff to sustain the alleged contract. We think the challenge to the validity of this arrangement goes deeper than the matter of consideration. It was proper for the parties to pool their efforts in behalf of their clients and to divide the fees resulting from services rendered to these clients; but if the plaintiff is to be believed such was not their principal purpose. Whether or not it was anticipated that the collections from the stockholders would be absorbed by fees allowed to receiver and attorney, such was in fact the result.

We are considering here the alleged contract relating to the division of fees to be realized, not from their own clients, but from the imposition of receiverships upon financially embarrassed corporations. The receivers for these corporations had not been appointed when this arrangement was made and, when appointed, were officers of the court, whose business it was to protect the interests of the creditors as a whole. To assist him in protecting these interests the receiver of the association appointed defendant as his attorney. There might be grave conflict between some individual creditor and the receiver, and that individual creditor might be plaintiff's client.

As said by Chief Justice Taft in Weil v. Neary, 278 U. S. 160, 172, 49 S. Ct. 144, 149, 73 L. ed. 243:

"For the protection of the estate and itself the bankruptcy court must rely largely on counsel for the trustees, as also on counsel for creditors, to keep watch against unjust charges. Under this con-

tract there would be an obvious incentive for counsel to do otherwise."

There the alleged contract for division of fees was between counsel for one group of creditors and counsel for the trustee. The court said further [278 U. S. 172]:

"Certainly there would be a temptation to both Untermyer and Weil to seek so to increase the allowance as to secure a generous provision for both. Motive for excessive allowance could hardly be more direct."

It is true that a rule of the bankruptcy court forbade the employment by the trustee without leave of court of an attorney who also represented a creditor. But we think a contract between such lawyers to share fees would be against public policy even without the rule, and the Supreme Court gives at least an intimation that such would be its view.

In plaintiff's case there is a more fatal infirmity. A legitimate basis for division of fees between attorneys should be either a division of labor or responsibility. Canon 34, American Bar Assn. The plaintiff neither performed professional services nor shared responsibility in the association matter. There was no more consideration passing to defendant in this connection than that plaintiff says he "brought the case of the Four County Farmers Association to his [defendant's] office." He did not bring his own case against the association to the defendant because an answer had been interposed and no judgment was ever obtained. Defendant had nothing whatever to do with plaintiff's client in this regard except later to suggest the filing of the claim with the receiver. Plaintiff did not bring the Melges case to defendant because defendant already had it when plaintiff came. The thing that plaintiff brought was at most a suggestion that "fees and profits" were to be made out of receivership proceedings against that corporation. It was these that he says they agreed to divide.

As we view the alleged arrangement it was a diversion of legal proceedings from their legitimate purposes, which are for the pro-

tection and furtherance of the rights of litigants, to the private enrichment of officers of the court, and as such against public policy. As said by the Supreme Court in Weil v. Neary, 278 U. S. 160, 174, 49 S. Ct. 144, 73 L. ed. 243: "Such a transaction between counsel calls for judicial condemnation." The courts will leave the parties where they find themselves.

The order appealed from is reversed and the case remanded with directions to the trial court to enter judgment for the defendant notwithstanding the verdict.