**Christine Hollender CHRISTENSEN, et al., Respondents,**

v.

**Brad C. EGGEN, petitioner, Appellant.**

No. C5–96–2275.

Supreme Court of Minnesota.

April 16, 1998.

Andrea E. Reisbord, Peter G. Van Bergen, Cousineau, McGuire & Anderson, Chartered, inneapolis, for Appellant.

Brad C. Eggen, pro se.

Jan Stuurmans, Law Offices of Jan Stuurmans, P.A., Minneapolis, for Respondents.

## OPINION

TOMLJANOVICH, Justice.

This case involves Minn. R. Prof. Conduct 1.5(e), which governs the splitting of fees between attorneys of different firms. We hold that public policy is clearly set forth by Minn. R. Prof. Conduct 1.5(e), and that fee-splitting agreements between attorneys of different firms must comply with all of the requirements of the rule to be deemed enforceable and consistent with public policy.

Fred Hollender is the deceased husband of the respondent, Christine Hollender Christensen. Prior to his death, Hollender was an attorney and sole shareholder of his firm, Fred Hollender, Attorney-at-Law, P.A. James Koch knew Hollender and had previously used Hollender's legal services for business purposes. James and Kathy Koch consulted with Hollender regarding a potential medical malpractice claim on behalf of their son, Jeffrey Koch. Hollender then referred the potential malpractice claim to Brad Eggen, a solo practitioner, whom Hollender believed to be a more experienced personal injury attorney than himself. Initially, they planned to share responsibility on the Koch case, with Hollender acting as a consulting attorney during the potential litigation. They agreed that Hollender would receive a third of the total fees that Eggen received from the case. Eggen admits that Hollender had "referred" at least two other cases to Eggen in the past, in which Hollender remained active throughout the cases and they shared fees.[1]

---

1. Eggen asserts that "[i]n both cases, Hollender was to earn fees by a significant substantive ongoing involvement in the representation of the client to the cases' conclusion." Eggen states

In a letter to Eggen dated April 6, 1989, Hollender attempted to put their fee agreement in writing. Hollender wrote: "I want to confirm in writing my understanding that I am entitled to a 1/3 referral fee of the amount of your fees in the Koch [c]ase—if we get it. Please let me know if I can do anything to help sew the case up." This fee-splitting arrangement was not included in the client's retainer agreement; however, Eggen did inform the Koch family of Hollender's potential involvement with Jeffrey's case through two letters dated April 3, 1989, and October 24, 1989.[2] Hollender died on June 30, 1992, before the majority of the pretrial work was done and two years prior to the actual trial. All parties acknowledge that Hollender performed no actual work on the case, other than making the referral. Eggen was the only attorney of record throughout the court proceedings and on August 9, 1994, the jury awarded Koch a judgment in the amount of $1,390,914, which was appealed to the court of appeals.

In April 1995, Hollender's widow, Christensen, filed an attorney's lien in Anoka County in an attempt to recover a third of Eggen's fees from the Koch case pursuant to Eggen and Hollender's agreement. A third of Eggen's total fee was $132,120.85. On February 22, 1996, after the court of appeals affirmed the judgment for Koch, Christensen filed a declaratory judgment action in Anoka County to enforce the fee-splitting agreement between Hollender and Eggen. Eggen's motion for a change of venue to Hennepin County was granted. The attorney's lien was dismissed on April 11, 1996, pursuant to a stipulation by the parties in which Christensen discharged and released all parties from any liability for the attorney's lien.

Eggen moved for summary judgment in the declaratory judgment action. In granting summary judgment for Eggen, the dis-

trict court held that Christensen *either* could have intervened in the Koch matter by filing the attorney's lien *or* instituted an independent action to seek her remedy, but that the doctrine of election of remedies prevented her from attempting to do both. The district court determined that Christensen had elected her remedy by filing the attorney's lien and that she waived her claim by agreeing to the stipulation, which resulted in the dismissal of the attorney's lien. The district court further held that the fee-splitting arrangement was contrary to public policy, because it did not conform to the requirements of the Minnesota Rules of Professional Conduct, and that whatever contract Hollender may have had with Eggen necessarily terminated upon Hollender's death, because it was a contract to perform personal services.

It was from this judgment that Christensen appealed to the court of appeals, which reversed and remanded the case. First, the court of appeals held that Christensen's attorney's lien action did not implicate the election of remedies doctrine and that "the trial court erred in concluding that the doctrine of election of remedies barred Christensen's declaratory judgment action on the fee-sharing contract." Second, the court held that a balancing test should be employed in determining whether the agreement violated public policy, and while the Minnesota Rules of Professional Conduct may evidence public policy, there was no violation of public policy because there was no issue of great public importance implicated in this case which outweighed the policy favoring freedom in negotiating contracts. More simply stated, "failure * * * to comply precisely with the professional rules on splitting fees did not render [Hollender and Eggen's] agreement unenforceable as a matter of law." *Christensen v. Eggen,* 562 N.W.2d 806, 812 (Minn.App.1997).

that in the previously referred cases: Hollender's secretary and support staff were utilized and paid by Hollender; Hollender drafted pleadings and performed initial research on one case; and Hollender handled nearly all of the client contact on the other case for two years.

**2.** James and Jeffrey Koch both filed affidavits declaring that neither of them regarded Hollender as Jeffrey's attorney nor did they agree to his

sharing in the attorney's fees. Donna Blazevic, the primary attorney of record for the Koch defendants, also filed an affidavit declaring that Eggen was the only attorney that she was aware of representing Jeffrey Koch, and that she had neither heard of Hollender nor had any contact with him during the time she represented the Koch defendants.

This case sets forth two basic issues: (1) whether Christensen's declaratory judgment action is barred by the election of remedies doctrine; and (2) whether a fee-splitting agreement between attorneys from different firms violates public policy when it does not strictly comply with Minn. R. Prof. Conduct 1.5(e).[3] This case comes to us pursuant to a grant of summary judgment and involves questions of law, which we review de novo. *See Dairyland Ins. Co. v. Starkey*, 535 N.W.2d 363, 364 (Minn.1995).

## I.

The election of remedies issue can be easily disposed of, because it is clear that this particular case does not fall within the bounds of the doctrine:

> The doctrine of election of remedies requires a party to adopt one of two or more coexisting and inconsistent remedies which the law affords the same set of facts. The purpose of the doctrine is not to prevent recourse to any particular remedy but to prevent double redress for a single wrong.
>
> However, if inconsistent remedies are sought and it is doubtful which one will bring relief, a party may claim either or both alternatively until *one remedy is pursued to a determinative conclusion*. Therefore, a party should not be bound by an election unless he has pursued the chosen course to a determinative conclusion or has procured advantage therefrom, or has thereby subjected his adversary to injury.

*Vesta State Bank v. Independent State Bank*, 518 N.W.2d 850, 855 (Minn.1994) (internal quotation and citations omitted; emphasis added).

The attorney's lien action filed by Christensen was not pursued to a determinative conclusion. It was dismissed and considered waived by the stipulation in which Christensen agreed she would not pursue the attorney's lien. However, that stipulation did not waive any other claim of redress. In fact the district court, in dismissing the attorney's lien, clearly contemplated that no final judgment had been reached on the substantive issue, stating: "The issue of whether there is a contract between Hollender and Eggen and all related issues including the validity of any purported assignment thereof is not decided here. Those issues shall be litigated and decided in the declaratory judgment contract action which is now pending." There is also no indication that Christensen received any advantage from bringing both actions or that Eggen has suffered any injury. Under these facts, we affirm the court of appeals' ruling that the election of remedies doctrine does not prevent Christensen from pursuing the declaratory judgment action to a determinative conclusion.

## II.

The second issue we must decide is whether the fee-splitting agreement is enforceable. Rule 1.5(e) of Professional Conduct provides:

> A division of fee between lawyers who are not in the same firm may be made only if:
>
> (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
>
> (2) the client is advised of the share that each lawyer is to receive and does not object to the participation of all the lawyers involved; and
>
> (3) the total fee is reasonable.

Because there is no issue as to the reasonableness of the total fee, we will focus on the requirements in (1) and (2) of the rule, which require that the client agree to the representation and the fee split in writing and that the client be advised of the share that each lawyer is to receive.[4] In this case,

---

**3.** Attorney fees were awarded to Eggen by the district court for the costs incurred while defending the declaratory judgment action. However, the court of appeals reversed the award of attorney fees, and neither party appealed that determination to this court. Therefore, we will not address the propriety of attorney fees.

**4.** A fee split is permitted when the division is in proportion to the services performed by each lawyer, as set forth by Minn. R. Prof. Conduct 1.5(e)(1) and the other requirements of the rule are satisfied. However, in this case, Hollender performed no work on the case so that aspect of the rule need not be discussed.

Koch did not give written consent to any dual representation or splitting of fees between Hollender and Eggen. Similarly, Koch was never told of the particular amount that Hollender was to receive under the fee-splitting agreement. Therefore, this fee-splitting agreement fails to comply with two of the three requirements of Minn. R. Prof. Conduct 1.5(e).

 The purpose of these rules governing fee-splitting agreements is to protect the client's best interests throughout his/her representation. Each client has a right to choose the attorney that he/she prefers and to be knowledgeable about the specifics of his/her case, especially those terms regarding the payment of fees. To allow attorneys to proceed with fee-splitting arrangements without the client's written agreement or knowledge would put the client at a severe disadvantage in the lawyer-client relationship.

Prior to the adoption of the Minnesota Rules of Professional Conduct, this court held that "[a] legitimate basis for division of fees between attorneys should be either a division of labor or responsibility." *Anderson v. Grimes*, 183 Minn. 472, 476, 237 N.W. 9, 10 (1931). Therefore, it is clear that this court has always limited the splitting of fees between attorneys. Legal commentators have noted reasons why fee-splitting agreements often require a division of labor or responsibility to be consistent with public policy:

> An agreement to pay a referral fee is often viewed as unenforceable as against public policy. It is thought likely to increase the overall fee charged, to ignore the rights of the client to choose his own lawyer, and to encourage neglect and unethical conduct in the referring attorney, besides being unfair to the one who has done all of the work.

Caroll J. Miller, Annotation, *Validity and Enforceability of Referral Fee Agreement Between Attorneys*, 28 A.L.R.4th 665, 667 (1984) (internal cross-reference omitted).

This court has stated that "public policy requires that freedom of contract remain inviolate except only in cases when the particular contract violates some principle which is of even greater importance to the general public." *Rossman v. 740 River Drive*, 308 Minn. 134, 136, 241 N.W.2d 91, 92 (1976). However, there are specific and identifiable reasons why fee-splitting contracts may be detrimental to the general public, many of which are set forth above and which support a determination that fee-splitting agreements must be monitored closely and the rules must be enforced. We have set forth rules of conduct in this state which do not allow for the splitting of fees only in proportion to the services performed by each attorney, but also allow for the splitting of fees if the client consents in writing to the attorneys maintaining joint responsibility. In enforcing these rules, this court considers the best interests of the client, and Minn. R. Prof. Conduct 1.5(e) provides the client with some measure of protection.

In this case, while the attorneys may initially have intended to divide the labor and responsibility, Hollender performed no work on the case and did not maintain joint responsibility for the case because of his untimely death. Koch was neither told of the share that each attorney would receive, nor did he consent to the fee split and joint representation in writing. The fee-splitting agreement did not comply with two of the three requirements of Rule 1.5(e).

The fee-splitting agreement between Hollender and Eggen violates public policy because it does not comply with Minn. R. Prof. Conduct 1.5(e) and is therefore unenforceable.

Reversed.

GILBERT, J., took no part in the consideration or decision of this case.