*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0088
A15-0358**

Soderberg & Vail, LLC,
Appellant,

vs.

Meshbesher & Spence, Ltd.,
Respondent.

**Filed January 4, 2016
Affirmed
Minge, Judge***

Hennepin County District Court
File No. 27-CV-12-23143

Sharon Van Dyck, Donald Chance Mark Jr., Peter A.T. Carlson, Andrew T. James, Fafinski Mark & Johnson, P.A., Eden Prairie, Minnesota (for appellant)

Konstandinos Nicklow, James B. Sheehy, Meshbesher & Spence, Ltd., Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Minge, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**MINGE**, Judge

These consolidated appeals arise out of a claim by appellant law firm Soderberg & Vail, LLC (S&V) for a portion of the attorney fees received by respondent law firm Meshbesher & Spence, Ltd. (M&S) in a personal-injury lawsuit that appellant referred to respondent. Appellant argues that the district court erred by (1) dismissing its breach-of-contract claim on the ground that the fee arrangement was unenforceable because it violated Minn. R. Prof. Conduct 1.5(e); (2) concluding that there were no genuine issues of material fact and granting respondent's motion for summary judgment with respect to five other claims; (3) excluding certain statements as hearsay; and (4) awarding only $20,000 in quantum meruit damages. Respondent cross-appeals, arguing that the district court's quantum meruit award of $20,000 was excessive and that the court erred in finding appellant was the prevailing party at trial. Because the district court did not err as to any of these decisions, we affirm.

**FACTS**

In 1997, respondent M&S approved a written, cross-referral arrangement with attorney Scott Soderberg. The parties agreed that M&S would refer clients with workers' compensation claims to Soderberg, and Soderberg would refer clients with personal-injury claims to M&S. Soderberg was to receive one-third of the attorney fees earned by M&S for cases that he referred, and M&S was to receive a percentage of the fee earned by Soderberg on workers' compensation cases it referred him. Subsequently, Soderberg formed the S&V law firm, which continued this referral relationship with M&S.

2

In January 2006, Gary Will sustained an injury in the course of his employment. He contacted David Vail (Vail) of S&V and his brother Garrett Vail about this injury. Because Vail felt Will's claim was best handled in a personal-injury case, he referred Will to Mark Streed of M&S. Will signed a retainer agreement with M&S for a contingency fee of one-third of any net recovery, but the retainer agreement did not mention Soderberg, S&V, or any payment to that firm. In March 2007, Will's case was transferred within M&S to another attorney, John Sheehy.

In May 2010, Sheehy obtained a jury verdict in favor of Will for $7,870,000. The case ultimately settled for $6,350,000. The billing and financial documents prepared by M&S and presented to Will did not mention S&V or any payment to that firm. S&V contends that Will had several discussions with both Vails about the ongoing litigation and his unhappiness with Streed as his attorney, and that Vail and Will had several conversations during which Will indicated that Vail would be paid for his involvement in the litigation. These communications were recounted in affidavits and depositions of the Vails and third parties who claimed to have overheard the conversations. Will denied having any significant contact or discussion with the Vails or anyone at S&V about the ongoing litigation. Will also denied that S&V was being paid any fee, specifically stating in an affidavit that he "never consented and [did] not consent to pay a referral fee to Soderberg & Vail." The district court excluded testimony by Vail and third parties about these disputed statements as inadmissible hearsay.

In 2012, S&V sued only M&S for the expected portion of attorney fees, alleging seven counts: breach of contract, promissory estoppel, unjust enrichment, quantum meruit, breach of fiduciary duty, conversion, and civil theft. On April 1, 2013, the district court granted

M&S's motion to dismiss the breach-of-contract claim, reasoning that the fee-splitting agreement violates Minnesota Rule of Professional Conduct 1.5(e) and was therefore unenforceable.

On April 14, 2014, the district court granted M&S summary judgment as to all remaining counts except quantum meruit. The case went to a bench trial on the quantum meruit claim. The district court found that based on work performed, S&V was entitled to $20,000 of the total fee received by M&S and, as the prevailing party in this litigation, awarded S&V $3,432.40 in costs and disbursements. This appeal followed.

**D E C I S I O N**

**I.**

The first issue is whether the district court erred in dismissing the claim for breach of contract. On appeal from a dismissal, "[w]e review de novo whether a complaint sets forth a legally sufficient claim for relief. We accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank*, *N.A.*, 851 N.W.2d 598, 606 (Minn. 2014) (citation omitted).

Rule 1.5(e) of the Minnesota Rules of Professional Conduct states:

> A division of a fee between lawyers who are not in the same firm may be made only if
> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
> (3) the total fee is reasonable.

4

In 1998, the supreme court decided an appeal by the wife of a deceased attorney who had signed a fee-splitting agreement with another attorney but never performed any work on the case. *Christensen v. Eggen*, 577 N.W.2d 221, 223 (Minn. 1998). The client "was neither told of the share that each attorney would receive, nor did he consent to the fee split and joint representation in writing." *Id.* at 225. The court concluded that "[t]he fee-splitting agreement between [the deceased attorney] and [defendant] violates public policy because it does not comply with Minn. R. Prof. Conduct 1.5(e) and is therefore unenforceable." *Id.* [1]

S&V argues that the *Christensen* decision does not govern our case because the *Christensen* court based its decision on the fact that the client was unaware of the fee agreement. This is incorrect. In *Christensen*, the clients were informed that the deceased attorney would be "separately compensated from the attorneys' share of any recovery." *Christensen v. Eggen*, 562 N.W.2d 806, 808 (Minn. App. 1997), *rev'd*, 577 N.W.2d 221 (Minn. 1998). However, the clients were apparently not informed in writing of how the attorney fees would be split nor did they consent to this in writing. *Christensen*, 577 N.W.2d at 223 n.2. The *Christensen* court clearly stated its conclusion that the fee-splitting agreement was unenforceable. *Id.* at 225.

Here, the M&S and S&V law firms had been operating under a cross-referral arrangement for many years. Whether Will was aware that some fee would be paid to S&V is disputed, but it is undisputed that he was not informed of the terms of how fees would be

---

[1] Rule 1.5(e) has been amended since *Christensen*. The changes clarified that a client must provide consent, confirmed in writing, to the share each lawyer will receive. The revised wording of the rule is consistent with the holding in *Christensen*.

shared and did not confirm or consent in writing to the fee splitting. Even if we accept S&V's account of conversations with Will, we conclude that *Christensen* controls. Minn. R. Prof. Conduct 1.5(e) limits referral fee-splitting arrangements to carefully defined circumstances. The rule was not met here, and the district court did not err in dismissing S&V's breach of contract claim.

## II.

The next issue is whether the district court erred in granting summary judgment in favor of M&S as to the following counts: promissory estoppel, unjust enrichment, breach of fiduciary duty, conversion, and civil theft. "We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). "[W]hen the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element." *Id.* at 71.

*Promissory Estoppel*

"Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000)

(quotation omitted). "To state a claim for promissory estoppel, the plaintiff must show that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011). Summary judgment may be granted where, as a matter of law, a plaintiff's reliance on the promise is not reasonable. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995).

S&V knew or should have known that a fee-splitting arrangement is not enforceable if it does not comply with rule 1.5(e). Thus, any reliance on the referral agreement between the law firms was not reasonable because S&V knew that Will had not confirmed in writing his consent to each firm's share of the fees. Because S&V could not reasonably rely on a fee-splitting agreement it knew to be in violation of the rules of professional conduct, the district court did not err in granting summary judgment as to the promissory-estoppel claim.

*Unjust Enrichment*

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). An action for "unjust enrichment does not lie simply because one party benefits from the efforts of others; instead, it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully" or in the sense that "the [retaining party's] conduct in retaining the benefit is morally wrong." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001) (quotation omitted).

7

M&S did virtually all the work, took all the risk, and advanced all expenses associated with the case. The one-third contingency fee in the retainer agreement between M&S and Will is not unusual in personal-injury representation and is not at issue, and, we assume that for purposes of this appeal, it is not unreasonable. M&S was therefore not unjustly enriched by retaining the attorney fees sought by S&V. The district court did not err in granting summary judgment on this claim.

*Conversion and Civil Theft*

Conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." *DLH, Inc.*, 566 N.W.2d at 71. Under the civil theft statute, "a person who steals personal property from another is civilly liable to the owner of the property." Minn. Stat. § 604.14, subd. 1 (2014). A plaintiff with no property interest in the subject of the suit cannot prevail in an action for conversion or civil theft. *See Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. App. 1994), *review denied* (Minn. June 29, 1994); Minn. Stat. § 604.14 (2014).

Because the district court correctly determined that S&V had no enforceable contract right or property interest in the attorney fees in this case, we conclude that the district court did not err in granting M&S summary judgment as to the claims of conversion and civil theft.

*Breach of Fiduciary Duty*

The first step in determining whether or not there has been a breach of fiduciary duty is to establish the existence of a fiduciary relationship. *See Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (deciding first whether fiduciary relationship existed, before finding

8

breach of fiduciary duty). S&V argues that a fiduciary relationship existed on two grounds: first, that the cross-referral agreement between the law firms constituted a joint venture, and second, that M&S was in a "superior position in terms of knowledge and authority" in its relationship with S&V.

A fiduciary relationship exists between partners in a joint venture. *Lipinski v. Lipinski*, 227 Minn. 511, 519, 35 N.W.2d 708, 712 (1949). A joint venture exists where four elements are present: "(1) contribution by all parties, (2) joint proprietorship and control, (3) sharing of profits but not necessarily of losses, and (4) a contract." *Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 332 (Minn. 2004).

Will's personal-injury litigation and the cross-referral relationship between the law firms lack several of these requirements. After referring the case, S&V did not exercise control over any part of the case. M&S could end its representation of Will at any time or, in agreement with Will, end or settle the underlying litigation at any time. S&V had no role in making such basic decisions.

In addition, it does not appear that the referral relationship constitutes the sharing of profit. Black's Law Dictionary defines "profit" as, "The excess of revenues over expenditures in a business transaction." *Black's Law Dictionary* 1329 (9th ed. 2009). Where an entity is entitled to a fixed percentage of a legal recovery, not a percentage of profit, it is not profit sharing. *Dorsey & Whitney LLP, v. Grossman*, 749 N.W.2d 409, 417 (Minn. App. 2008) ("[P]ayment in the form of a fixed percentage of . . . recovery, whether that recovery was nothing or the millions of dollars anticipated, did not constitute profit sharing."); *see also Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 390 (Minn. App. 2004) (finding no joint

9

venture where an investor "was entitled to only a fixed percentage of [farmers'] surviving newborn pigs, regardless of whether the . . . farm was profitable"), *review denied* (Minn. Aug. 25, 2004). Although S&V seeks a portion of the net settlement amount, it does not establish a profit-sharing arrangement. This is a division of revenue, not profit sharing. The relationship between M&S and S&V did not constitute a joint venture.

S&V also argues that because M&S had a greater degree of control over Will's case, M&S was in a superior position to S&V, which created a fiduciary relationship. "A fiduciary relationship is characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 330-31 (Minn. App. 2007) (citing *Toombs*, 361 N.W.2d at 809), *review denied* (Minn. Aug. 21, 2007). In contrast, an ordinary business relationship may involve reliance on a professional, implying "a certain degree of trust and a duty of good faith," but the relationship is not classified as fiduciary. *Id.* at 331.

The relationship between the parties here is not one of the types of relationship identified by Minnesota courts as fiduciary. 4 Minnesota Practice, CIVJIG 23.10 (2014) (identifying the categories of relationships found to be fiduciary). And this relationship between two sophisticated professional entities did not reflect the type of authority imbalance and the level of trust and confidence that would indicate a fiduciary relationship existed. S&V had a business relationship with M&S, and although S&V could expect M&S to act in good faith, the firm did not have a relationship of trust and confidence that constitutes a fiduciary relationship.

We conclude that as a matter of law, the district court did not err in granting summary judgment in favor of M&S on the fiduciary-duty claim.

## III.

The next issue is whether the district court improperly excluded several statements by Vail and third-party witnesses as inadmissible hearsay. The statements described multiple alleged conversations between Vail and Will, in which Vail claims that Will stated that Vail would be paid for his involvement in the case. We need not reach the hearsay question. *Christensen* requires dismissal of the contract claim even if Will orally affirmed a fee-splitting agreement between S&V and M&S. The statements have no greater relevance to the conversion, civil theft, or breach of fiduciary duty claims. S&V knew or should have known that the fee-splitting agreement was not enforceable without Will's consent confirmed in writing. The client's alleged oral statements cannot form the basis for recovery under promissory estoppel or unjust enrichment against M&S. In these circumstances, even if the statements were admissible, any error in excluding them was harmless.

## IV.

The parties both challenge the $20,000 quantum meruit recovery by S&V. The district court's determination of the reasonable value of an attorney's work is a question of fact and must be upheld unless clearly erroneous. *Amerman v. Lakeland Dev. Corp.*, 295 Minn. 536, 537, 203 N.W.2d 400, 400-01 (1973). However, "when considering whether the district court employed the proper method to [determine reasonable value], we undertake a de novo review." *Thomas A. Foster & Assocs. v. Paulson*, 699 N.W.2d 1, 4 (Minn. App. 2005) (citation omitted). This court has identified factors that can help a district court in apportioning

11

attorney fees between two law firms that each worked on a case: "(1) the length of time each firm spent on the case; (2) the proportion of funds invested by each firm; (3) the quality of representation; (4) the result of each firm's efforts; (5) the viability of the claim at transfer; [and] (6) the amount of recovery realized." *Ashford v. Interstate Trucking Corp. of Am.*, 524 N.W.2d 500, 503 (Minn. App. 1994).

The district court awarded $20,000 in quantum meruit damages at trial.[2] Both parties argue that the district court committed clear error in its calculation of the reasonable value of S&V's services. M&S also objects to the $20,000 award, claiming S&V did no legal work of value and should receive nothing or only a nominal award of fees for what was done.

S&V argues the district court failed to attribute the proper value to S&V's threshold advice to Will that his case was best pursued as a personal-injury claim rather than a workers' compensation claim. The district court concluded, "S&V should not receive a significant fee for simply recognizing, without performing any research, that a workers' compensation claim was not warranted in this matter." S&V's argument is that it added great value to the case by steering it in the right direction. We recognize that proper legal counseling at the claim-

_____

[2] Quantum meruit damages are generally awarded where there is a viable unjust-enrichment or contract claim. *See Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984) (stating that recovery based on an unjust-enrichment theory was "in essence . . . an award in quantum meruit"); *Stemmer v. Estate of Sarazin*, 362 N.W.2d 406, 408 (Minn. App. 1985) (finding that quantum meruit "is used only when failure to do so would result in unjust enrichment"); Restatement (Third) of Restitution & Unjust Enrichment § 31 cmt. e (2011) (describing a quantum meruit claim as based either in contracts—seeking the enforcement of an implied term of an actual contract—or in unjust enrichment—seeking to recover the value of benefits conferred where there was no implied or express contract). Because the issue of whether quantum meruit can serve as independent grounds for recovery in this case was not raised by either party or addressed by the district court, we do not address it.

evaluation stage is critical. However, we assume a level of competence in the profession. Giving such threshold advice—without doing further work—does not entitle an attorney to enormous compensation. The district court's decision not to place extraordinary value on S&V's referral advice was not clearly erroneous.

Next, both M&S and S&V argue that the district court erred by apportioning the fees and making an award to S&V based on the approximate hours devoted to the case. The district court properly analyzed the *Ashford* factors in evaluating S&V's contribution. Our role is to determine whether the district court's evaluation of reasonable value was clearly erroneous.

The district court made significant findings regarding the *Ashford* factors. It stated that "M&S spent at least 1000 hours on the Will matter," while "S&V performed 10 hours of work on the Will matter." The court also made findings related to the proportion of funds invested by each firm, the result of each firm's efforts and how quickly it was referred, and the amount of recovery realized. The court concluded that S&V had invested little or no resources in the case and that M&S did not require Vail's advice at the outset of the case to recognize that it was best pursued as a personal-injury claim. Based on the relative time each law firm had invested in the case, the district court awarded S&V approximately 1% of the attorney fees, or $20,000. We conclude that the amount of the quantum meruit award was not clearly erroneous.

## V.

The final issue is whether the district court erred in awarding costs to S&V. The district court may award reasonable costs to a prevailing party. *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn. 1998). The district court has discretion to determine which litigant, if

13

any, is the prevailing party and this decision will be upheld absent an abuse of that discretion. *In re Will of Gershcow*, 261 N.W.2d 335, 340 (Minn. 1977).

In *Borchert v. Maloney*, a defendant argued that because the damages award to the plaintiff at trial was less than the amount of defendant's earlier rule-68 settlement offer, the district court erred in deciding the plaintiff was the prevailing party. 581 N.W.2d 838, 840 (Minn. 1998). The supreme court upheld the district court's decision, stating that "[t]he prevailing party in any action is one in whose favor the decision or verdict is rendered and judgment entered." *Id.*

M&S argues that, given the number and the size of S&V's claims and its rejection of settlement offers significantly exceeding $20,000, the trial court abused its discretion by finding that the decision awarding S&V $20,000 in quantum meruit damages qualified S&V as the prevailing party. Here, as in *Borchert*, the plaintiff prevailed on the merits of a claim at trial, but was awarded less in damages than the rejected rule-68 offer. Although S&V failed to recover the judgment it sought, it was awarded damages on the merits. We conclude that the district court did not abuse its discretion in determining that S&V was the prevailing party.

**Affirmed.**