598 So.2d 507 (1992)
Michael J. SCURTO
v.
Christopher B. SIEGRIST and Christopher B. Siegrist a Professional Law Corporation.
No. CA902292.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Writ Denied July 1, 1992.
*508 Keith M. Whipple, Houma, for plaintiff and appellantMichael J. Scurto.
Carlos E. Lazarus, Jr., for defendant and appelleeChristopher B. Siegrist and Christopher B. Siegrist, A Law Corp.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
The primary issue in this case is the division between two attorneys of a contingent attorney fee resulting from the proceeds of the settlement of a personal injury case.
Nathaniel Scott Smith was injured in an automobile accident on August 27, 1986. Smith shortly thereafter retained the services of an attorney, Michael J. Scurto, whom Smith had known both personally and professionally for several years. Smith and Scurto entered into a contingent fee contract whereby Scurto would receive as his professional fee one-third of the amount recovered. At the time that Scurto was initially retained by Smith, Scurto was employed as an Assistant District Attorney in Terrebonne Parish. With Smith's knowledge and agreement, Scurto associated attorney Christopher B. Siegrist and Siegrist's professional law corporation to assist him in handling Smith's personal injury action.
The parties to the personal injury action arrived at a negotiated settlement resulting in an attorney fee of $130,300.02. Scurto sought his share of the attorney fee which he alleged to be two-thirds of the total fee which amounted to the sum of $86,868.68. Siegrist contended that Scurto had not performed sufficient work to have earned two-thirds of the fee and tendered to Scurto the sum of $43,433.34 which was one-third of the fee. Scurto instituted an action for breach of contract against Siegrist individually and Christopher B. Siegrist, a Professional Law Corporation.
After trial on the merits the jury rendered a verdict in favor of Scurto. In response to a special interrogatory the jury found that the value of Scurto's services to the outcome of the personal injury suit entitled Scurto to 60% of the attorney fee. The trial court entered judgment in accordance with the special verdict and additionally cast Scurto for 60% of the costs of this action.
From the judgment Scurto appeals alleging as error: (1) the trial court's refusal to allow the introduction of an oral contract between the parties to this action and evidence and testimony in support thereof; (2) the trial court's failure to award the full contract amount; (3) the trial court's refusal "to allow the agreement and/or a charge to the jury relative to bad faith and damages"; and (4) the assessment of 60% of costs against plaintiff. Siegrist answered the appeal and alleged the following assignments of error: (1) the trial court's denial of defendants' motion to strike the jury; and (2) the award of 60% of the attorney fee to plaintiff and an insufficient fee to defendant.

DIVISION OF ATTORNEY FEE
The primary issue raised in appellant's first and second assignments of error and appellees' second assignment of error is whether Scurto is entitled to the full 2/3 of the fee sought.
The trial court refused to allow testimony and the introduction of evidence of the contract between Scurto and Siegrist regarding their division of the attorney fee. The trial court reasoned that the division of a legal fee between lawyers who are not in the same firm is governed by the former Code of Professional Responsibility which *509 subject matter is now governed by the Rules of Professional Conduct. Relying on Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), on rehearing, 373 So.2d 114 (La.1979) and DR 2-107 and DR 2-106 the trial court stated that a legal fee must be divided in proportion to the value of the services furnished by the attorneys. Any contract for the division of legal fees which does not comply with the Code of Professional Responsibility is unenforceable and against public policy. Since the Code of Professional Responsibility provides that an attorney is not entitled to an unearned fee, plaintiff is only entitled to that portion of the fee which is earned.
The trial court instructed the jury that: the contract, if any, entered into by plaintiff and defendant was not dispositive of the issue of the division of the fee; the dispositive issue was whether plaintiff performed sufficient work to have earned a portion of the fee; the amount of the fee to which the plaintiff was entitled must be earned by plaintiff through the rendering of professional services; and the jury must determine the amount of the fee earned by Scurto.
The subject matter of Disciplinary Rule 2-107 of the Code of Professional Responsibility is now contained in Rule 1.5(e) of the Rules of Professional Conduct. The Rules of Professional Conduct were effective on January 1, 1987. The contingent fee contract between Smith and Scurto and the employment of Siegrist were confected before the effective date of the Rules of Professional Conduct. DR 2-107 provided:
Division of Fees Among Lawyers.
(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law firm or law office, unless:
(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
(2) The division is made in proportion to services performed and responsibility assumed by each.
(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.
(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.
In Saucier, the Supreme Court held that it is constitutionally empowered to regulate the practice of law. Thus, the rules adopted by the court under its constitutional mandate to regulate the legal profession have the force and effect of substantive law. Saucier, 373 So.2d at 115. The Supreme Court relied on DR 2-106 of the Code of Professional Responsibility which prohibits a lawyer from collecting excessive fees and determined that a discharged attorney has the right to be reimbursed for the fee he has earned pursuant to a contingency fee employment contract after the client employs successive counsel and the client's case is subsequently settled or a judgment is obtained. The client is responsible for a single contingency fee which must be apportioned between the attorney on a quantum meruit basis. The underlying policies promoted in Saucier are the admonition to attorneys that unethical conduct will not be tolerated or rewarded; discouragement of professional disputes; and the encouragement of out of court settlements. The client benefits because the client is assured of being treated fairly by not being required to pay more than one contingency fee in an amount which he has previously agreed to pay. Further, the client is allowed to change attorneys with or without cause without the potential penalty of being placed in financial peril. Id. at 118-119.
In the situation where a retained attorney associates, employs or procures the employment of another attorney to assist him in handling a case involving a contingency fee, the agreement regarding division of the fee is a joint venture which gives the parties to the contract the right to participate in the fund resulting from the payment of the fee by the client. Thus, the suit by an attorney to recover pursuant *510 to that agreement is a suit to recover for breach of the agreement to share in the fund resulting from payment of the fee. It is not a suit for recovery of attorney's fees. Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts, 354 So.2d 192 (La.1978). When the attorneys in a Duer situation have entered into an agreement regarding the division of the fee the Code of Professional Responsibility (or Rules of Professional Conduct) does not prohibit enforcement of that agreement and does not require apportioning of the fee on a quantum meruit basis. The trial court erred in determining that the contract was in derogation of the Code of Professional Responsibility. See Lloyd v. Tritico, 527 So.2d 57 (La.App.3d Cir.), writ denied, 528 So.2d 154 (La.1988); Defrancesch v. Hardin, 510 So.2d 42 (La.App. 1st Cir.), writ denied, 513 So.2d 819 (La.1987).
Over the objections of plaintiff's counsel the trial court refused to allow testimony by plaintiff and defendant and introduction of exhibits establishing the existence, if any, of such an agreement. The proffered testimony may have changed the outcome of the case. "When a jury is given incorrect instructions in the law, or when a trial court makes a consequential error in the exclusion of evidence, no weight should be accorded the judgment of the trial court which implements the jury verdict." McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986). Additionally, the trial court's reliance on Saucier and quantum meruit as the basis for division of the fee and the jury instructions to that effect have tainted the jury verdict. Thus, we are required to make an independent determination from the record, including consideration of the proffered testimony of whether plaintiff has proved his case by a preponderance of the evidence.
In the proffered testimony defendant unequivocally admitted that he and plaintiff had indeed entered into an agreement to divide the legal fees whereby plaintiff was to receive 2/3 of the fee and defendant was to receive 1/3. Plaintiffs duties under the agreement were management of the client, management of the file and advancement of costs. A review of the record reveals that Scurto was actively and continually involved with the case by frequently communicating with the client, advancing all expenses he was requested to pay, in researching jurisprudence and statutory law, and attending depositions on behalf of his client.
We hold that the contract was valid and should be enforced. The agreement between plaintiff and defendant was one confected between two professionals and we will not assume the position of dictating to attorneys in a Duer situation exactly how much work they need perform to entitle them to a certain fee. See Defrancesch, 510 So.2d at 46. Accordingly, the judgment of the trial court is reversed and rendered in favor of plaintiff who is entitled to the full 2/3's of the fee for which he contracted amounting to $86,866.68, plus interest from date of judicial demand.

BAD FAITH AND DAMAGES
In the third assignment of error plaintiff contends that over the objection of counsel the trial court refused to allow testimony regarding defendants' alleged bad faith breach of the contract and refused to allow testimony relative to that breach. Thus, "the action of the trial judge in this regard erroneously removes items of damage from the province of the jury."
Although plaintiff timely objected to the trial court's refusal to charge the jury, plaintiff did not proffer evidence or testimony regarding damages. The purpose of a proffer is to preserve excluded testimony for appellate review. Plaintiff's failure to proffer the evidence of damages precludes him from complaining of the exclusion. McLean v. Hunter, 495 So.2d at 1305.
Even though plaintiff timely objected to the trial court's failure to charge the jury on defendant's alleged bad faith breach we need not determine whether the trial court's failure to so charge constitutes harmless error or was so prejudicial as to taint the verdict. As previously discussed, we have set aside the jury verdict and the trial court's judgment entered in accord *511 thereof and have independently reviewed the record. The record contains no proffered evidence or testimony of the consequential damages, if any, suffered by plaintiff. Thus, we are unable to evaluate any evidence in support of plaintiff's contention. This assignment of error is without merit.
Since plaintiff prevails on appeal we reverse the judgment of the trial court assessing 60% costs to plaintiffs. Costs of trial and of this appeal are assessed against defendants.
REVERSED AND RENDERED.