# Supreme Court of Louisiana

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY McCallum, J.:**

2025-C-00195     IKE SPEARS VS. WILLIAM W. HALL (Parish of Orleans Civil)

Retired Judge William C. Dupont appointed Justice ad hoc, sitting for Griffin, J., recused.

Retired Judge Kirk A. Vaughn appointed Justice ad hoc, sitting for Hughes, J., recused.

COURT OF APPEAL JUDGMENT REVERSED; JUDGMENT ENTERED IN FAVOR OF DEFENDANT, WILLIAM W. HALL. SEE OPINION.

Dupont, A.H.J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2025-C-00195

## IKE SPEARS

## VS.

## WILLIAM W. HALL

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans Civil

**MCCALLUM, J.**[*]

This case illustrates a notorious problem in our profession, that "[d]espite their many advantages, co-counsel relationships sometimes go terribly awry and the lawyers, who initially saw themselves as joint venturers in beneficial and profitable service to their mutual client, wind up pitted against one another like scorpions in a bottle."[1]

This case presents the question of whether the Rules of Professional Conduct ("RPC"),[2] adopted by this Court in 1987, apply when attorneys purport to form a joint venture to provide legal services. The answer is unequivocally yes. No matter the nomenclature attorneys adopt to describe their collective representation— whether a partnership, joint venture, unincorporated association, or otherwise— when the purpose of the relationship is the provision of legal services, the RPC is implicated.

---

[*] Justice Allison H. Penzato, appointed Justice *Pro Tempore*, sitting for the vacancy in Louisiana Supreme Court District 1. Retired Judge William C. Dupont, appointed Justice *Ad Hoc*, sitting for Justice Griffin, recused. Retired Judge Kirk A. Vaughn, appointed Justice *Ad Hoc*, sitting for Justice Hughes, recused.

[1] Douglas R. Richmond, Professional Responsibilities of Co-Counsel: Joint Venturers or Scorpions in A Bottle?, 98 Ky. L.J. 461, 515 (2010).

[2] The RPC replaced the former Code of Professional Responsibility and became effective on January 1, 1987. The Louisiana RPC is codified in Article XIV of the Louisiana State Bar Association's Articles of Incorporation and is "identical to the ABA's Model Rules of Professional Conduct in all relevant aspects." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001).

The RPC govern the conduct of attorneys and "unquestionably have the force and effect of substantive law." *Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-0414, p. 10 (La. 5/15/01), 788 So. 2d 1140, 1148 (quoting *Succession of Wallace*, 574 So. 2d 348, 350 (La.1991)). In *Chittenden*, we emphasized that the RPC "permeates all facets of the lawyer-client relationship." *Id.*, 00-0414, p. 9, 788 So. 2d at 1147. The issues presented by this case compel us to further clarify that the RPC permeates all facets of the practice of law, including the relationship between lawyers and their representation of clients. The lower courts committed reversible legal error by failing to recognize the direct interplay between the RPC and the facts of this case, and by failing to apply the rules that govern representation by attorneys from different firms.

The lower courts further erred by finding that a joint venture[3] existed between Ike Spears and William Hall when Mr. Hall entered into a contingency fee agreement with the client, the Port of Orleans ("Port") in November 2007. More specifically, the lower courts failed to apply pertinent Civil Code articles and Louisiana jurisprudence in making this determination. Nothing in the record—under our jurisprudence, the RPC, or the Civil Code—supports the lower courts' finding. The record likewise fails to establish the existence of any other enforceable contractual relationship between the parties to represent the Port when Mr. Hall signed the hourly fee agreement with the Port in June 2006, or at any point thereafter.

Mr. Spears and Mr. Hall initially intended to jointly represent the Port *on a contingency fee basis*. The Port, however, was only willing to retain counsel on an hourly basis at that time. Mr. Spears refused to be involved in the representation under those terms. The Port then contractually engaged only Mr. Hall. The parties did not unanimously consent to the material change in the terms of their original

---

[3] "The essential elements of a joint venture are two or more parties combining their property, labor or skill in the conduct of a venture for joint profit, with each party having some right of control over the business." *Shepherd v. Jay*, 508 So. 2d 650, 652 (La. App. 2 Cir. 1987).

agreement to represent the Port—namely, changing the fee arrangement from a contingency to an hourly basis. Therefore, no joint venture existed when Mr. Hall contracted with the Port in 2006 or later, in 2007. As Mr. Spears declined to join in the representation of the Port, or enter into any contractual agreement, the lower courts erred in finding Mr. Hall owed any continuing obligation to Mr. Spears.

We reverse the judgments of the lower courts and enter judgment in favor of defendant, Mr. Hall.

## FACTS AND PROCEDURAL HISTORY

Ike Spears approached William W. Hall about submitting a joint proposal to the Board of Commissioners for the Port to provide joint legal representation and services on a contingency fee basis for the Port's Hurricane Katrina-related insurance claims. The two verbally agreed to join forces. Mr. Spears initiated a meeting with his contacts at the Port: Executive General Counsel Gerald O. Gussoni, Jr., and President/Chief Executive Officer Gary LaGrange. The meeting was held to discuss the parties' interest in jointly representing the Port.

After the meeting, on October 10, 2005, Mr. Hall sent Mr. Gussoni a letter addressing whether a Louisiana political subdivision, such as the Port, could lawfully enter into a contingency-fee agreement with an attorney. Mr. Hall, Mr. Spears, and Adjusters International ("AI"), the adjusting firm brought in by Mr. Spears, submitted several joint proposals to the Port over the next two months. All of the proposals provided that Mr. Hall and Mr. Spears would be retained on a contingency fee basis.

The Port held a special meeting on December 7, 2005, where the executive committee reported its recommendation "to authorize Mr. LaGrange to award a contract for any legal services associated with Hurricane Katrina catastrophe losses to the team of Hall & Spears." The Port voted to authorize Mr. LaGrange to "take

3

any steps necessary to award these contracts and negotiate appropriate fees commensurate with the Board's ability to pay."

Nearly six months later, Mr. Gussoni met with Mr. Hall, the designated point of contact for the team of Mr. Hall and Mr. Spears, and offered to retain them—but only on an hourly fee basis. Mr. Hall and Mr. Spears met at the Windsor Court Polo Lounge later that day to discuss the offer,[4] and Mr. Spears stated he had no interest in working on an hourly fee basis.[5]

On June 2, 2006, Mr. Gussoni sent an engagement letter to both Mr. Spears and Mr. Hall via email, which featured signature lines for both attorneys. The letter specified the parties would be retained by the Port on an hourly basis, at a rate of $200.00 per hour. Mr. Hall informed Mr. Gussoni that Mr. Spears was not interested in an hourly fee agreement.[6] As a result, Mr. Gussoni emailed Mr. Hall a second, nearly identical engagement letter that retained only Mr. Hall for the Port's representation; Mr. Spears was not included in this engagement letter. Shortly thereafter, Mr. Hall signed the second engagement letter and began working on the Port's claims, preparing for litigation with FM Global, the Port's risk management property insurer. It is undisputed that Mr. Spears performed no work in the representation of the Port.

A year later, at the advice of AI, Mr. Hall consulted Mr. Gussoni about bringing in another firm to assist with the Port's Katrina-related insurance claims. From a list of attorneys recommended by AI, the Port interviewed and selected

---

[4] Pat Bickford and Brian Revere, representatives of AI, were also present at the Polo Lounge meeting. In his affidavit, Mr. Revere attested that during the meeting, Mr. Spears "announced that he had recently received a legal fee for $7.5 million and that he was not going to handle the [Port]'s case/claims for fees on an hourly basis and that he was not interested in doing the legal work for the [Port]."

[5] According to Mr. Hall, Mr. Spears exclaimed he was "not interested in doing any chicken s*** hourly work." However, Mr. Spears did not recall using such strong language, but he conceded that he was not willing to represent the Port on an hourly basis.

[6] There is nothing in the record indicating Mr. Spears replied to Mr. Gussoni's email.

Florida-based attorney William "Chip" Merlin to assist in the representation. Mr. Merlin, however, was unwilling to work on an hourly basis. Accordingly, the Port, through Mr. Gussoni and Mr. LaGrange, executed a contingency fee contract with Mr. Merlin and Mr. Hall's firms on November 1, 2007, for their joint representation of the Port. The contingency contract provided for a 33.3333% fee for a gross recovery of sums exceeding $95,000,000. Mr. Hall and Mr. Merlin executed a separate agreement to share in the contingency fees equally.

In a deposition taken in connection with this litigation, Mr. Hall testified that he mentioned to Mr. Gussoni that Mr. Spears might be interested in participating in the case once the contingency fee arrangement had been proposed. According to Mr. Hall, Mr. Gussoni instructed him not to share this information with Mr. Spears because the Port was in the process of suing Mr. Spears for legal malpractice for his work with the Port on an unrelated case.[7] The Port's malpractice suit against Mr. Spears was filed approximately one week before the contingency fee contract with Mr. Merlin was executed.

In November 2008, FM Global agreed to settle the Port's claim in the amount of $117,500,000.00. Mr. Hall's share of attorney's fees was $6,002,278.31, from which $900,118.58 was deducted for the hourly fees already paid to him.

On July 14, 2010, Mr. Spears filed the instant lawsuit against Mr. Hall, alleging a breach of a joint venture agreement and seeking one half of the contingency fee earned by Mr. Hall, plus attorney's fees.[8] In his petition for damages, Mr. Spears alleged that Mr. Hall utilized Mr. Spears' name and reputation

---

[7] Mr. Gussoni testified that he did not recall having this conversation with Mr. Hall.

[8] Mr. Spears also asserted a claim for unjust enrichment; however, he later waived that claim. The only issues before the district court were whether a joint venture existed between the parties when Mr. Hall entered into a contingency fee contract with the Port and Mr. Merlin, and if so, whether Mr. Spears was entitled to half of the contingency fees on that basis, or whether he was entitled to damages equal to one half of those fees.

to submit a joint proposal to the Port, and once the contract was awarded, Mr. Hall discarded Mr. Spears in order to retain all attorney's fees.

During a two-day bench trial beginning on March 20, 2023, Mr. Spears testified that it was his idea to propose a contingency fee contract to the Port for its Katrina-related insurance claims. Mr. Spears asserted that: (1) he and Mr. Hall had a joint venture agreement, albeit oral, wherein they would split on a 50/50 basis any attorney's fees earned from their contingency contract with the Port; (2) his prior relationship with the Port is the reason Mr. Hall had the opportunity to contract with the Port; and, (3) Mr. Hall violated his fiduciary duty to the joint venture when he deliberately failed to inform Mr. Spears of the possibility of later entering a contingency fee contract with the Port.

Mr. Hall testified that he had no fiduciary duty to Mr. Spears under their initial oral agreement because Mr. Spears refused to enter into a contract with the Port on an hourly fee basis. Further, Mr. Hall asserted Mr. Spears was barred from claiming half of the contingency fee earned by Mr. Hall on the grounds that the parties' oral agreement, as well as Mr. Spears' complete lack of work on the Port's Katrina-related insurance claims violated the RPC.

On July 19, 2023, the district court rendered judgment for Mr. Spears, finding: a valid and enforceable joint venture existed between the parties when Mr. Hall entered the contingency fee agreement with the Port and Mr. Merlin; Mr. Hall's failure to inform Mr. Spears of the possibility of participating in the contingency fee contract with the Port violated his fiduciary relationship with Mr. Spears; and, Mr. Hall breached the parties' oral joint venture by executing a contingency fee agreement with the Port that excluded Mr. Spears. The district court awarded Mr. Spears general damages in the amount of one-half of the contingency fee earned by Mr. Hall, $2,551,079.86, plus attorney's fees, expenses, and court costs.

Mr. Hall filed a motion for new trial, asserting no joint venture existed between the parties; the district court failed to consider whether public policy prohibited Mr. Spears from sharing a contingency fee under Rules 7.2(c)(13) and 1.5(e) of the RPC; and the district court's award of attorney's fees was not permitted under the law. The district court granted Mr. Hall's motion for new trial as to the attorney's fees but denied it in all other respects. Mr. Hall appealed. The court of appeal affirmed the district court judgment. *Spears v. Hall*, 24-0075 (La. App. 4 Cir. 1/13/25), 414 So. 3d 620.

In its plurality opinion, the court of appeal held that the district court reasonably found the parties had a valid and enforceable joint venture at the time Mr. Hall entered into a contingency fee contract with the Port. It reasoned that both Mr. Hall and Mr. Spears testified to their continued communications about the Port during the time Mr. Hall was working under the initial hourly fee agreement. Additionally, the court focused on Mr. Spears' testimony:

> Mr. Spears also testified that he continued to press Mr. Hall to seek a contingency fee agreement from the Port on behalf of Hall & Spears. Accordingly, our review of the record indicates that the district court reached a reasonable conclusion when it found that the joint venture agreement was still in effect at the time the contingency fee agreement was offered and executed.

*Id.*, 24-0075, pp. 16-17, 414 So. 3d at 631.

The court of appeal then considered Mr. Hall's contention that the joint venture agreement was absolutely null because it failed to comply with Rules 7.2(c)(13) and 1.5(e) of the RPC, *infra*. Although the court of appeal agreed with Mr. Hall that the RPC carries the force and effect of substantive law, it did not meaningfully address this issue. Instead, it largely avoided the issue and focused on the "contractual relationship" between the parties and the district court's finding "that Mr. Hall breached that contractual relationship." *Id.*, 25-0075, p. 22, 414 So. 3d at 634. The court of appeal found that "[w]hen Mr. Hall failed to disclose to Mr.

7

Spears that there was an opportunity to enter into the contingency fee contract—the object of the venture—he deprived Mr. Spears of the opportunity to provide representation to the Port, which breached the oral contract between the two." *Id.*

The court of appeal further affirmed the damages award, agreeing with the district court's characterization of the claim as one for breach of contract rather than an attorney's fee dispute. On that basis, the court of appeal concluded that the RPC was inapplicable. The court found that because Mr. Spears was prepared to avail himself of the opportunity to represent the Port on a contingency fee basis, he was entitled to recover lost profits for his lost business opportunity in the amount of half of Mr. Hall's earned contingency fee:

> In this case, the district court made it clear that its decision was premised on a breach of contract claim, not a fee dispute over the attorney's fees generated from the FM Global settlement. As such, the court found the [RPC] was inapplicable and nothing more than a "red herring." Furthermore, Mr. Spears testified that he was prepared to avail himself of an opportunity to represent the Port on a contingency fee basis.
>
> ***
>
> Here, relative certainty of the damages award was provided by the settlement statement, which gave a detailed accounting of the amount of both the hourly and the contingency fee earned by Mr. Hall. This gave the district court an easily ascertainable ready market value for the amount of lost business income suffered by Mr. Spears. **Additionally, we agree that [RPC] 1.5(e) is not germane to the set of facts before us. Our review of the history surrounding this rule indicates that its spirit is to protect the public from opaque contracts with attorneys who, in turn, farm out their representation to an attorney not contracted by the client. That is not the case before us. As the district court found, although the [Port] awarded the opportunity to enter into a contract to Hall & Spears, Mr. Hall breached his fiduciary duty to Mr. Spears when he prevented him from the opportunity to enter into a contingency fee contract with the Port**. Accordingly, we find the district court did not err when it awarded damages to Mr. Spears for Mr. Hall's breach of contract. Further, based upon the record, we find the district court had a reasonable basis to award those damages in an amount equal to one half of the contingency fee.

*Id.*, 24-0075, p. 23-25, 414 So. 3d at 635-36. (Emphasis added).

Mr. Hall then filed a writ application with this Court, which we granted. *Spears v. Hall*, 25-00195, p. 1 (La. 5/6/25), 408 So. 3d 198.

## DISCUSSION

Mr. Hall contends that the lower courts erred by concluding an enforceable joint venture existed between the parties both when he entered into the initial hourly fee agreement with the Port in June 2006, and when he later executed the contingency agreement with the Port in November 2007. Additionally, Mr. Hall argues that the lower courts committed reversible error by: (1) finding that Mr. Spears lost an opportunity to perform contingency fee work for the Port by Mr. Hall's exclusion of him; (2) concluding that Mr. Hall breached a fiduciary duty to Mr. Spears where none existed; and (3) holding that the RPC is inapplicable and unenforceable with respect to the validity of the parties' oral joint venture agreement. As a result, Mr. Hall maintains, the approximately $2.5 million award to Mr. Spears is unfounded and should be vacated. We agree.

### *Standard of review*

It is well-settled that a court of appeal may not set aside a trial court or jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). However, where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should conduct its own independent *de novo* review of the record and determine a preponderance of the evidence. *Evans v. Lungrin*, 97-0541, 97-0577 at pp. 6-7 (La. 2/6/98), 708 So. 2d 731, 735.

A legal error occurs when a trial court applies incorrect principles of law, and such errors are prejudicial. *Cook v. Sullivan*, 20-1471, pp. 6-7 (La. 9/30/21), 330 So. 3d 152, 157 (citations omitted). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Id*. When a prejudicial

9

error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Id.*

We further note that while the existence of a joint venture is generally a question of fact, the determination of what legally constitutes a joint venture is a question of law. *Grand Isle Campsites, Inc. v. Cheek*, 262 So. 2d 350, 357 (La. 1972).

The record reveals clear legal errors which interdicted the fact-finding process, such that the manifest error standard of review is inapplicable. Accordingly, we begin our *de novo* review by determining whether the parties established a valid joint venture, and, if so, we then consider whether a joint venture existed when Mr. Hall entered into the contingency fee-based contract with the Port.

The trial court concluded that the parties entered into an oral agreement—a joint venture—in 2005 to provide legal services to the Port "on a contingent basis." The court of appeal also acknowledged that the contingency fee contract was "the object of the venture." *Spears*, 24-0075 at p. 22, 414 So. 3d at 634. Accordingly, the lower courts found the object of the parties' agreement was not simply to provide legal services, but to provide those services on a contingency fee basis.

Neither lower court properly addressed the legal effect, under the Civil Code, of Mr. Spears' express rejection of the Port's offer to enter into an hourly fee agreement on the existence or continuation of the parties' joint venture. The lower courts thus erred by failing to apply pertinent Louisiana Civil Code articles governing the termination of a partnership or a joint venture. In doing so, they failed to follow the well-settled rule that, in order "[t]o prevent their misapplication, the articles of the Civil Code must not be read in isolation." *Potter v. First Federal Sav. And Loan Ass'n of Scotlandville*, 615 So. 2d 318, 322 (La. 1993). Indeed, laws on

10

the same subject matter "must be interpreted in reference to each other." La. Civ. Code art. 13.

### *Joint venture*

A joint venture is the "special combination of two or more persons who jointly seek a profit through a specific [venture] without any partnership or corporate designation." *Hayes v. Muller*, 245 La. 356, 366; 158 So. 2d 191, 194 (1963). Joint venture relationships are fiduciary in character. *Id.* Generally, joint ventures are governed by the law of partnership. *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 22, 262 So. 2d 350, 356 (1972).

Louisiana Civil Code article 2801 defines a partnership as "a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." A partnership agreement is a nominate contract that need not be made in writing.[9] *Id.* cmt. (a). Partnership agreements are governed by the rules of conventional obligations, where not otherwise provided in Article 2801, *et seq.* La. Civ. Code art. 2802. Absent a specific agreement to the contrary, each partner participates equally in partnership profits, commercial benefits, and losses. La. Civ. Code art. 2803.

A partnership, as defined by Article 2801, is "created by contract." Under the rules of conventional obligations, a contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. The essential requirements of a valid contract are capacity to contract, mutual consent, a lawful cause, and a certain object. *See* La. Civ. Code arts. 1918, 1927, 1966, and 1971. Under La. Civ. Code art. 1983, "[c]ontracts have the effect of law for the parties and may be dissolved only through the consent of the

---

[9] Some partnership agreements require a writing for formation (partnerships in commendam) or for a partnership's acquisition of immovable property. *See* La. Civ. Code art. 2801, cmt (a).

parties or *on grounds provided by law*. Contracts must be performed in good faith." (Emphasis added).

Louisiana Civil Code Article 2807 sets forth the standards governing partner decision-making, providing: "[u]nless otherwise agreed, unanimity is required to amend the partnership agreement, […] to terminate the partnership, or to permit a partner to withdraw without just cause if the partnership has been constituted for a term. Decisions affecting the management or operation of a partnership must be made by a majority of the partners, but the parties may stipulate otherwise." However, a partnership may terminate by other means. A partnership terminates upon the occurrence of any of the circumstances enumerated in La. Civ. Code art. 2826, including the impossibility of attaining the object for which the partnership was formed:

> Art. 2826. Termination of a partnership, causes
>
> Unless continued as provided by law, a partnership is terminated by: the unanimous consent of its partners; a judgment of termination; the granting of an order for relief to the partnership under Chapter 7 of the Bankruptcy Code; the reduction of its membership to one person; the expiration of its term; or the attainment of, or the impossibility of attainment of the object of the partnership.
>
> A partnership also terminates in accordance with provisions of the contract of partnership.

If the object of a partnership becomes impossible, the partnership may be continued for a different object. La. Civ. Code art. 2827.[10] In that instance, the adoption or pursuit of other objectives would evidence an intent to continue the partnership; the partners' use of the partnership to pursue other objectives results in

---

[10] Article 2827 provides:
> A partnership may be expressly or tacitly continued when its term expires or its object is attained, or when a resolutory condition of the contract of partnership is fulfilled. If the object becomes impossible, the partnership may be continued for a different object.
>
> Unless otherwise agreed, a partnership that is expressly or tacitly continued has no term.

a tacit continuation. *Id.* cmt. (a); *see also* Glenn G. Morris and Wendell H. Holmes, 7 La. Civ. L. Treatise, Business Organizations § 4:12 (July 2025 Update). Although the Civil Code does not provide expressly how or by whom a partnership may be continued after the impossibility of the object terminates the partnership, we are guided by Morris and Holmes, who explained in their Civil Law Treatise:

> [B]ecause a partnership is a form of nominate contract, and because the power to make contract-amendment decisions is vested in the parties to that contract, i.e., the partners, it appears that a continuation decision would be treated as an amendment of the contract of partnership, and hence would require the unanimous consent of the partners.[11]

*Id.*

Applying these principles to the circumstances presented by this case, we find that Mr. Spears and Mr. Hall initially established a valid joint venture agreement to assist the Port with Katrina-related insurance claims on a contingency basis.[12] There is no dispute that in the fall of 2005, Mr. Spears approached Mr. Hall about jointly representing the Port for its hurricane claims on a contingency fee basis, and Mr. Hall agreed. It is further undisputed that Mr. Spears and Mr. Hall verbally agreed to submit a joint proposal for the Port's representation and to jointly share in the fees earned as a result. Importantly, however, the joint venture terminated upon the impossibility of the object—the Port's failure to agree to the parties' proposal for a contingency fee agreement.

The record is devoid of any evidence that the parties unanimously consented to continue their initial joint venture agreement, or that the parties established a new joint venture once the Port failed to agree to the parties' proposed contingency fee agreement. Mr. Spears admitted he had no interest in representing the Port on an hourly fee basis. Mr. Hall, by contrast, agreed to represent the Port for an hourly fee,

---

[11] *See also*, La. Civ. Code art. 2807, *supra*.

[12] This finding is based on Louisiana law of conventional obligations (contracts) and partnership. The applicability of the RPC to the parties' agreement is discussed *infra*.

and the Port then retained Mr. Hall, alone. Moreover, Mr. Spears never sought reimbursement for any funds associated with the hourly work Mr. Hall performed for the Port, implicitly acknowledging the nonexistence of any agreement between the two attorneys during that time. For these reasons, we find the parties' joint venture terminated under La. Civ. Code art. 2826 and was not subsequently continued, either expressly or tacitly, under La. Civ. Code art. 2827.

Our finding is further reinforced by other established civil law principles, including the consequences of the nonfulfillment of a suspensive condition of the parties' obligations under the initial joint venture.

An obligation is conditional where it is dependent on an uncertain event. *See* La. Civ. Code art. 1767. Further, "[i]f the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory." *Id.* Those "[c]onditions may be either expressed in a stipulation or implied by the law." La. Civ. Code art. 1768. A suspensive condition that is impossible renders the obligation null. La. Civ. Code art. 1769. Moreover, the non-fulfillment of a suspensive condition similarly nullifies an obligation:

> When a suspensive condition is not fulfilled, that is, when it fails because the uncertain event of which it consists does not occur, the obligation subject to it is regarded as not having existed, as a consequence of which the obligee loses the conditional right he had until that moment and is regarded as having never derived such right from the obligation.

Saul Litvinoff and Ronald J. Scalise Jr., 5 La. Civ. L. Treatise, Law Of Obligations § 5.14 (2d ed.) (November 2025 Update).

Although Mr. Spears had previously represented the Port, when he approached Mr. Hall in the fall of 2005 about jointly representing the Port for their Katrina-related insurance claims, he had not yet entered into any agreement (contingency or otherwise) with the Port for that representation. Thus, the Port's

14

acceptance of the parties' proposal of a joint contingency fee agreement was an uncertain event upon which the existence and enforceability of the parties' reciprocal obligations under the joint venture depended. However, the Port, unwilling to enter into a contingency fee agreement, rejected the proposal and instead offered to retain the attorneys on an hourly fee basis. Accordingly, the suspensive condition—securing a contingency fee contract from the Port—was not fulfilled. Any obligations the parties may have had to each other under their verbal agreement to jointly represent the Port were thereby terminated.

We find unpersuasive the parties' reliance on jurisprudence involving joint ventures that arose only after one attorney was retained by the client, and the other was subsequently engaged as co-counsel for that representation. *See Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07), 950 So. 2d 641; *Duer and Taylor v. Blanchard, Walker, O'Quin and Roberts*, 354 So. 2d 192 (La. 1978); *McCann v. Todd*, 203 La. 631, 14 So. 2d 469 (1943); *Scurto v. Siegrist*, 598 So. 2d 507 (La. App. 1st Cir. 1992); *Rice, Steingberg, & Stutin, P.A. v. Cummings, Cummings, & Dudenhefer*, 97-1651 (La. App. 4 Cir. 3/18/98), 716 So. 2d 8, *writ denied*, 98-1328 (La. 6/26/98), 719 So. 2d 1288. Because neither Mr. Spears nor Mr. Hall had an existing contract with the Port when they purported to form a joint venture, this matter is distinguishable from those cases.

In both *Duer* and *Scurto*, an attorney entered a valid contingency fee agreement with a client, then subsequently procured the employment of another attorney to assist him in that representation, thereby creating a joint venture between the two attorneys. Here, conversely, notwithstanding the parties' initial oral agreement to jointly represent the Port on a contingency fee basis, no enforceable arrangement existed between either party and the Port at the time of the agreement for which a second attorney would be brought in as co-counsel.

15

Thus, the record clearly demonstrates the joint venture, and any fiduciary duties arising therefrom, terminated under multiple, independent theories: the impossibility of the joint venture's object, the parties' failure to amend their agreement or enter into a new joint venture, and the nonfulfillment of a suspensive condition of the joint venture. Applying the clear provisions of Louisiana law—particularly those governing obligations, contracts, and partnership—we conclude that the lower courts erred in holding that a joint venture existed either when Mr. Hall began working on the Port's Katrina-related insurance claims in 2006, or in 2007, when the contingency fee agreement with Mr. Merlin was executed. This finding, alone, warrants reversal of the lower court judgments.

Nevertheless, this case merits further examination as to whether the RPC applies and what impact these rules may have under the circumstances presented.

***Rules of Professional Conduct***

In considering and rejecting Mr. Hall's contention that the RPC applies to this case, the court of appeal concluded that "the rules of contract apply to any alleged breach, not the [RPC]." *Spears v. Hall*, 24-0075, p. 19, 414 So. 3d at 632. We recognize case law noting that a breach of a joint venture to claim a share of attorney's fees is considered a breach of contract claim, rather than a fee dispute. *See Duer and Taylor*, 354 So. 2d 192. Notably, *Duer and Taylor* addressed the issue in the context of determining what prescriptive period applies to this claim. There, this Court determined that two attorneys' dispute over a share in a client's legal fee was governed by the ten-year prescriptive period for breach of contract matters, rather than the three-year prescriptive period for actions by "attorneys for their fees and emoluments." *Id.* 354 So. 2d at 194 (citing then-La. Civ. Code art. 3538; now subsumed in La. Civ. Code art. 3494).

In *Raspanti v. Litchfield*, 19-0523 (La. App. 4 Cir. 2/12/20), 364 So. 3d 131, *writ denied*, 20-00563 (La. 9/23/20), 301 So. 3d 1187, and *writ denied*, 20-00763

16

(La. 9/23/20), 301 So. 3d 1191, the court of appeal also viewed an attorney's fee dispute as a breach of contract case. In that case, two attorneys verbally agreed to represent a client, with each sharing half the costs and fees. When one attorney's law firm allegedly failed to pay its share of associated defense costs, the other filed suit to dissolve the fee agreement on the basis that it violated Rule 1.5 of the RPC. The court of appeal found that the RPC did not apply, observing that the "underlying suit. . . is a suit for alleged breach of contract arising out of a joint venture" and thus, the damages sought were for the firm's "alleged breach of its obligations to pay its share of the . . . defense costs." *Id.*, 19-0523, p. 14, 364 So. 3d at 141 (footnote omitted). The court relied, in part, on the decision of *Scurto*, *supra*:

> In matters such as this, where an attorney associates, employs, or procures another attorney to assist in handling the case, the agreement regarding the division of legal fees is considered a joint venture, whereby the interest each attorney has under such a joint venture gives the parties the right to participate in the fund resulting from the payment of attorney's fees from the client. *Scurto v. Siegrist*, 598 So.2d 507, 509 (La. 1992). The Supreme Court in *Scurto* considered whether the division of a legal fee between lawyers not of the same firm violated the former Code of Professional Responsibility. In *Scurto*, the retained attorney had entered an oral agreement to divide legal fees with another attorney. The agreement required the retained attorney to manage the client and advance costs. Finding that the fee agreement arose from a joint venture, the *Scurto* Court opined that "the suit by an attorney to recover pursuant to [an] agreement is a suit to recover for breach of the agreement to share in the fund resulting from payment of the fee. It is not a suit for recovery of attorney's fees." *Id.*, at 509-10 (citing *Duer and Taylor v. Blanchard, Walker, O'Quin and Roberts*, 354 So.2d 192 (La. 1978)).

*Id.*, 19-0523, pp. 12-13, 364 So. 3d at 140 (footnote omitted).

The *Raspanti* court's decision was based on a former version of Rule 1.5(e) which, at the time, provided in part, that "[a] division of fee between lawyers who are not in the same firm may be made only if: (1) The division is in proportion to the

17

services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibilities for the representation. . . ."

The current version of Rule 1.5(e), which applies to the instant matter, is substantially different:

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
>
> > (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fees that each lawyer will receive;
> >
> > (2) the total fee is reasonable; and
> >
> > (3) each lawyer renders meaningful legal services for the client in the matter.

We reiterate that Rule 1.5(e), like all of the RPC, "unquestionably [has] the force and effect of substantive law." *Succession of Wallace*, 574 So. 2d 348, 350 (La. 1991) ("[t]he standards governing the conduct of attorneys by rules of this court unquestionably have the force and effect of substantive law"). As such, whether a suit by one attorney against another for a share of attorney's fees is couched in terms of a contract dispute or a fee dispute is immaterial unless the attorneys have complied with Rule 1.5(e) of the RPC.

In a dispute between lawyers of different firms over attorney's fees allegedly owed, the starting point of the analysis is whether the client agreed in writing "to the representation by all of the lawyers involved" and was advised in writing of each attorney's respective share of the fees. *See* Rules of Professional Conduct Committee, Public Opinion 12-Rpcc-018, 59 La. B.J. 436 (2012) ("In any instance involving an agreement for the division of legal fees made between lawyers who are not in the same firm, the threshold inquiry is whether the agreement complies with Rule 1.5(e). . ."). Thus, any cases upholding agreements that do not comply with Rule 1.5, including *oral* agreements between attorneys of different firms for the joint

18

legal representation of a client without the client's written agreement, are expressly overruled.

In the instant matter, the only valid retention agreement for legal services was between the Port and Mr. Hall. The record contains no evidence that the requirements of Rule 1.5(e) were met; namely, that the Port agreed in writing "to the representation by all of the lawyers involved" and was advised in writing "as to the share of the fees that each lawyer [would] receive." Mr. Spears thus failed to demonstrate the mandatory compliance with Rule 1.5(e)(1) of the RPC. Mr. Spears also failed to show that he "render[ed] meaningful legal services" for the Port as mandated by Rule 1.5(e)(3).

There are few cases addressing subpart (3) of Rule 1.5(e). However, this provision is clearly intended to ensure that fee-splitting arrangements reflect the actual contributions each attorney makes to the representation of a client, rather than mere referral fees or nominal participation. The RPC unequivocally prohibits referral fees. Rule 7.2(c)(13) of the RPC states, in pertinent part, that "[a] lawyer shall not give anything of value to a person for recommending the lawyer's services." The Rule contains no exception for referrals between attorneys. Thus, any attempt to exchange or share fees purely for referrals violates the ethical obligations imposed on all attorneys.

In *Dukes v. Matheny*, 02-0652 (La. App. 1 Cir. 2/23/04), 878 So. 2d 517, where an attorney referred a case to another attorney but had "no hands-on participation" in the case, the court found that the referring attorney had no right to any of the attorney's fees, stating:

> Notably, the law does not provide a basis for recovering a fee for the referral of a legal matter by one attorney to another. To be entitled to recover a portion of the contingency fee generated in a referred matter, the referring attorney must participate in the representation of the client. . . . [Here], [h]aving neither performed any

> services nor assumed any responsibilities, [the attorney] was not entitled to any portion of the fee.

*Id*., 02-0652, pp. 6-7, 878 So. 2d at 521-22.

In a closely analogous case, *Christensen v. Eggen*, 577 N.W.2d 221 (Minn. 1998), the Minnesota Supreme Court found two attorneys' noncompliance with Minn. R. of Prof. Conduct Rule 1.5(e)[13] rendered the agreement unenforceable as a matter of public policy. The court found:

> In this case, while the attorneys may initially have intended to divide the labor and responsibility, Hollender performed no work on the case and did not maintain joint responsibility for the case because of his untimely death. Koch was neither told of the share that each attorney would receive, nor did he consent to the fee split and joint representation in writing. The fee-splitting agreement did not comply with two of the three requirements of Rule 1.5(e).

*Id*., 577 N.W.2d at 225.

As a general rule, when a valid agreement exists between attorneys and the attorneys have performed work for a client, enforcement of that agreement lies in contract. This rule is inapplicable, however, where, as here, there is no valid agreement between the attorneys (including, for example, a joint venture, partnership, or other fee-sharing contract).

This case is therefore distinguishable from *Raspanti* and similar jurisprudence applying contract principles to disputes over existing fee-sharing agreements where attorneys jointly represent a client pursuant to that agreement. In *Raspanti*, the parties did not dispute the existence of an agreement. The dispute concerned the enforcement of the agreement. Here, by contrast, the contingency fee agreement

---

[13] The only notable difference between Minnesota's Rule and Louisiana's RPC Rule 1.5(e) is that Minnesota has adopted the latest language from the ABA regarding the services of each attorney such that the division of the fee must be in proportion to the services performed by each attorney or each attorney assumes joint responsibility for the representation. Louisiana only requires each attorney to render "meaningful legal services for the client in the matter," pursuant to a previous version of the respective ABA Rule. La. Rules of Pro. Conduct r. 1.5(e); *see also* Minn. Rules of Pro. Conduct r. 1.5(e); Model Rules of Pro. Conduct r. 1.5(e).

between Mr. Hall and Mr. Spears was never effectuated. The absence of an enforceable agreement between Mr. Spears and Mr. Hall is dispositive. It follows that non-compliance with Rule 1.5(e) precludes any division of fees between Mr. Spears and Mr. Hall. The lower courts thus erred in characterizing this matter solely as a breach of contract dispute and declining to consider the relevance of the RPC.

## DECREE

Based on the foregoing, we find the lower courts erred in awarding Mr. Spears half of the attorney's fees paid to Mr. Hall in the legal representation of the Port. After Mr. Spears declined to participate in the joint representation of the Port, the joint venture or other contractual relationship between Mr. Spears and Mr. Hall was extinguished, along with any associated obligations. Thus, the lower courts erred in finding that Mr. Hall breached a fiduciary duty to Mr. Spears where no such duty existed. We therefore reverse the court of appeal's judgment and enter judgment in favor of Mr. Hall.

**COURT OF APPEAL JUDGMENT REVERSED; JUDGMENT ENTERED IN FAVOR OF DEFENDANT, WILLIAM W. HALL.**

**SUPREME COURT OF LOUISIANA**

**No. 2025-C-00195**

**IKE SPEARS**

**VS.**

**WILLIAM W. HALL**

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans Civil

**DUPONT, J.,[1]** *ad hoc*, **additionally concurs and assigns reasons**

I concur with the majority opinion and its result, and I write separately to highlight the inability of Mr. Spear to enter a contract with the Port when the contingency fee based contract was effected because the Port had an ongoing malpractice suit against Mr. Spears. This dispute created an adversarial relationship between Mr. Spears and the Port. Considering this undisputed fact, Mr. Spears could not have ethically participated in a joint venture for representation of the Port at that time.

---

* Justice Allison H. Penzato, appointed Justice *Pro Tempore*, sitting for the vacancy in Louisiana Supreme Court District 1. Retired Judge William C. Dupont, appointed Justice *Ad Hoc*, sitting for Justice Griffin, recused. Retired Judge Kirk A. Vaughn, appointed Justice *Ad Hoc*, sitting for Justice Hughes, recused.